IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| FIDELITY & GUARANTY LIFE<br>INSURANCE COMPANY | :<br>:<br>: | |
| v. | : | Civil No. CCB-05-2732 |
| LUCILLE HARROD, et al. | :<br>: | |

## MEMORANDUM

Now pending before the court is cross-defendant Rapid Settlements, Ltd.'s ("Rapid") motion to dismiss or abate cross-claimant Settlement, Funding, L.L.C., d/b/a Peachtree Settlement Funding's ("Peachtree") cross-claim pending the resolution of arbitration. Both interpleader Fidelity & Guaranty Life Insurance Company ("F&G Life") and Peachtree have opposed this motion. The issues have been fully briefed and no hearing is necessary. Local Rule 105.6. For the reasons that follow, Rapid's motion will be denied.

## BACKGROUND

Pursuant to a July 5, 2000 settlement agreement, cross-defendant Lucille Harrod ("Harrod") became entitled to receive periodic payments of $512.05 per month for twenty years ("periodic payments") from the St. Paul Companies ("St. Paul"). (*See* Complaint for Interpleader, Exhibit A, Settlement Agreement) St. Paul, as provided for in the settlement agreement, then assigned its obligation to make these payments to cross-defendant Fidelity and Guaranty Assignment ("F&G Assignment"), thus completely discharging its obligation to Harrod. (*See* Complaint for Interpleader, Exhibit B, Assignment) To fund its obligation to make the periodic payments to Harrod, F&G Assignment purchased the annuity which is the subject of the present dispute from interpleader F&G Life. (*See* Complaint for Interpleader,

1

Exhibits C & D, Annuity Application and Policy)  F&G Life thus agreed to make payments directly to Harrod. (*See* Complaint for Interpleader, Exhibit E, F&G Life Ltr)

Harrod, preferring to receive the settlement in a lump-sum payment, appears to have agreed to transfer portions of the periodic payments, now being made by interpleader F&G Life, to cross-claimant Peachtree in July of 2003 (120 payments) and August of 2004 (84 additional payments). (*See* Complaint for Interpleader, Exhibits F and J, Transfer Orders)[1]  Rapid also claims that it entered into a similar transfer agreement with Harrod in April of 2004, seeking to purchase 118 of the future periodic payments.  (*See* Rapid Mot. to Dismiss, Exhibit 1, Transfer Agreement)  In return for entering into this contract, Rapid claims it advanced Harrod $1,000 of the lump-sum payment as a loan, but alleges that Harrod refused to complete the transaction, thus breaching the contract, and has failed to repay the $1,000.  (*See* Rapid Mot. to Dismiss, Exhibit 2, Promissory Note)  Pursuant to its transfer agreement with Harrod, Rapid brought an arbitration proceeding in Texas against Harrod, and included F&G Life and F&G Assignment in an attempt to obtain payments from those companies. (*See* Complaint for Interpleader, Exhibit L, Rapid Ltr)

In light of the arbitration proceeding, Rapid and Peachtree's competing claims to the periodic payments, and the potential liability of F&G Assignment should the attendant

---

[1] Peachtree asserts that each transfer was made in compliance with the governing Florida statutes and was approved by the Circuit Court of the Sixth Judicial Circuit in Pinellas County, Florida, which issued "Transfer Orders" on July 23, 2003 and October 7, 2004. (*See* Complaint for Interpleader, Exhibits F and J, Transfer Orders) The court is denying Rapid's motion to dismiss without addressing the merits of the underlying dispute, and thus offers no opinion at this time as to the validity or superiority of these transfers.  Nor is the court expressing any views as to the validity or primacy of Rapid's claimed transfers, which Peachtree argues were made without obtaining appropriate court approval. (*See* Rapid Mot. to Dismiss, Exhibit 1, Transfer Agreement; Exhibit 3, U.C.C. Financing Statement)

2

uncertainty result in F&G Life failing to make the required annuity payments to the appropriate party, F&G Life filed the underlying complaint and motion for interpleader and discharge.  F&G Life's motion for interpleader was granted by the court on October 3, 2005, thereby ordering, *inter alia*, the multiple defendants to interplead and settle among themselves their respective rights and claims to the annuity payments, and enjoining each and all of the defendants from instituting any further proceedings in any state or federal court or proceeding with any arbitration or mediation against F&G Life, including the arbitration that was already pending in Texas.

In accordance with this October 3, 2005 order, Peachtree filed its cross-claim which Rapid answered, and now, claiming lack of jurisdiction, seeks to dismiss.  For the reasons that follow, Rapid's motion will be denied.

## **ANALYSIS**

Rapid argues that the court lacks jurisdiction to hear this dispute, appearing to base this contention on an argument that the cross-claim must be arbitrated and that the initial claim does not support supplemental jurisdiction under 28 U.S.C. § 1376. An interpleader action under 28 U.S.C. § 1335,[2] under which this case is brought, however, contemplates jurisdiction over just

---

[2] 28 U.S.C. § 1335 (a) reads as follows:  The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if (1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has

3

such a set of parties in just such a situation.[3]

In a statutory interpleader action brought under U.S.C. § 1335, it is diversity among the various defendant-claimants that is key to establishing jurisdiction. The claimants must be at least minimally diverse and the amount in controversy must equal $500 or more. *See* 28 U.S.C. § 1335 (a)("[t]wo or more adverse claimants, of diverse citizenship..."); *Tashire*, 386 U.S. at 530; *see also Selective Ins. Co. of America v. Norris*, 209 F.Supp.2d 580, 582 (E.D.N.C. 2002).[4]  That is present here. The court has jurisdiction to entertain F&G Life's underlying interpleader

---

paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

[3] The Supreme Court has identified the scenario in the present case as an appropriate one for the exercise of the court's jurisdiction in § 1335 actions: "There are situations...where the effect of interpleader is to confine the total litigation to a single forum and proceeding. One such case is where a stakeholder, faced with rival claims to the fund itself, acknowledges-or denies-his liability to one or the other of the claimants...This was the classic situation envisioned by the sponsors of interpleader." *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 534, n.16 (1967); *see also* 7 Wright, Miller & Kane, Federal Practice & Procedure § 1715 (2001)("...an inflexible rule prohibiting the assertion of cross-claims in actions under the act ignores the desirability of adjudicating these claims in a single action when they are closely related to the original dispute over the stake. Indeed, this is precisely the type of situation that motivated the federal courts to develop the doctrines of ancillary and pendent jurisdiction...There is no reason why this philosophy should not be applied to closely related cross-claims in actions under the interpleader statute. Certainly nothing in the statute prohibits employing what in effect is a notion of ancillary personal jurisdiction.").

[4] The requirements for diversity are different under § 1335 from those in an interpleader action initiated using Fed. R. Civ. P. 22, under which federal jurisdiction has to be found under 28 U.S.C. § 1332 when there is no federal question involved. *See Selective Ins.,* 209 F.Supp.2d at 582.  Under the Rule 22 and § 1332 analysis, diversity between the plaintiff-stakeholder and the various defendant-claimants is the focus, while under § 1335, it is irrelevant. *See id.*

action.[5]

Rapid, however, appears to be specifically challenging the court's jurisdiction over Peachtree's cross-claim against Rapid.  While courts considering interpleader actions do not have jurisdiction over persons who are not parties to the proceeding, they may decide issues relating to disputed property even where jurisdiction over the litigants could not otherwise be obtained. *See Carolina Casualty Ins. Co. v. Mares*, 826 F.Supp. 149, 153-54 (E.D.Va. 1993). Under circumstances where a statutory interpleader action is appropriate under § 1335, as it is here, nationwide service of process is authorized under 28 U.S.C. § 2361, and where the cross-claimants "have adversity in their demands upon the [interpleader] fund," the court may entertain their cross-claims on the funds that are the subject of the interpleader action.  *See Carolina Casualty*, 826 F.Supp. at 153 (citing *Allstate Ins. Co. v. McNeill*, 382 F.2d 84, 87 (4th Cir. 1967)).  Harrod, Peachtree, and Rapid each make conflicting claims to the annuity proceeds.

The court, therefore, has jurisdiction over this cross-claim, and the October 3, 2005 order was an appropriate exercise of power. *See Tashire*, 386 U.S. at 534 (noting the court's power under 28 U.S.C. § 2361 to enjoin other proceedings in this situation). While the reach of the court's jurisdiction over cross-claims in § 1335 actions may be more extensive in other circuits, it extends far enough under Fourth Circuit law to encompass the instant claim. *See Carolina Casualty*, 826 F.Supp. at 153 (noting that courts have reached conflicting results but that the standard in the Fourth Circuit is well established); *see also Priority Records, Inc. v. Bridgeport*

---

[5] Interpleader plaintiff, or "stakeholder," F&G Life, is a Maryland corporation. Among the various interpleader defendants and cross-claimants, F&G Assignment is a Maryland corporation, Harrod is a Florida resident, Peachtree is a Georgia L.L.C, and Rapid is a Texas corporation.

*Music, Inc.*, 907 F.Supp. 725, 728 (S.D.N.Y. 1995)(stating that some courts have extended the reach of jurisdiction further than others and noting that the Fourth Circuit restricts its reach to a determination of who can claim the interpled funds).  To hold otherwise would be inconsistent with the very purpose of a statutory interpleader action.[6]

Based on the foregoing, Rapid's motion will be denied.

A separate order follows.

   May 25, 2006                             /s/                 
Date                                                                          Catherine C. Blake
                                                                            United States District Judge

---

[6] Rapid also seems to argue that arbitration of the dispute between it and Harrod is enforceable and mandatory, thus precluding the court from exercising jurisdiction over the cross-claim in any event. This argument fails for a variety of reasons. First, arbitration agreements can generally only be enforced against parties to the agreement. *See International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416-417 (4th Cir. 2000)(stating the general rule, but noting limited circumstances, not present here, where nonsignatories could be bound by arbitration agreements). The first inquiry is always whether there is a valid agreement to arbitrate between the parties, *see Sydnor v. Conseco Financial Servicing Corp.*, 252 F.3d 302, 305 (4th Cir. 2001), and, here, there is no such agreement between Rapid and Peachtree. The Federal Arbitration Act ("FAA") may constitute federal policy favoring arbitration, but such a preference does not determine whether there was a valid agreement between parties; rather it applies to whether a matter falls within the scope of a valid agreement. *See Sydnor*, 252 F.3d at 305; *see also Fleetwood Enter. Inc. v. Gaskamp*, 280 F.3d 1069, 1073-74 (5th Cir. 2002). Second, as discussed above, appropriate § 1335 actions give courts the authority to enjoin just such conflicting proceedings, including arbitrations, as the court did in its October 3, 2005 order.