IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| FIDELITY AND GUARANTY<br>LIFE INSURANCE COMPANY | :<br>:<br>: |
| Plaintiff, | :<br>: |
| v. | :<br>: |
| LUCILLE HARROD, *et al.* | :  Civil No. CCB-05-2732 |
| Defendants | :<br>: |
| ------------------------------------------ | :<br>: |
| SETTLEMENT FUNDING, LLC d/b/a<br>PEACHTREE SETTLEMENT FUNDING, | :<br>:<br>: |
| Cross-complainant | :<br>: |
| v. | :<br>: |
| LUCILLE HARROD, | :<br>: |
| and | :<br>: |
| FIDELITY AND GUARANTY<br>ASSIGNMENT CORPORATION | :<br>:<br>: |
| and | :<br>: |
| RAPID SETTLEMENTS, LTD. | :<br>: |
| Cross-Defendants | : |

**MEMORANDUM**

Now pending before the court is a motion by Settlement Funding, LLC, d/b/a Peachtree

Settlement Funding ("Peachtree") to impose sanctions against Rapid Settlements, Ltd. ("Rapid").

The parties have fully briefed the motions and no hearing is necessary. *See* Local Rule 105.6. For the reasons stated below, Peachtree's motion to impose sanctions will be granted.

## BACKGROUND

Under the terms of an unrelated lawsuit, Lucille Harrod ("Mrs. Harrod") became entitled to receive periodic payments under the terms of a structured settlement. The payments, in the amount of $512.05 a month, were to be paid by Fidelity and Guaranty Assignment Corporation ("F & G Assignment"). To fulfill this obligation, F & G Assignment purchased an annuity from Fidelity & Guaranty Life Insurance Company ("F & G Life"). F & G Life agreed to make the settlement payments directly to Mrs. Harrod.

In 2003, Mrs. Harrod entered into an agreement with Peachtree to sell and assign her right to the F & G Life payments. On June 2 of that year, Peachtree and Mrs. Harrod entered into the Absolute Assignment and Article 9 Security Agreement ("First Peachtree Agreement"), under which Mrs. Harrod assigned 120 of the monthly settlement payments, beginning on September 1, 2003 and ending after the payment on August 1, 2013. Under Florida Statute § 626.99296 ("Florida Transfer Statute"), a court must authorize any proposed transfer of settlement payment rights before such a transfer may become effective. To comply with the statute, Peachtree filed an application in the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida; that court approved the transfer on July 23, 2003. The following year, Mrs. Harrod and Peachtree entered into a second agreement ("Second Peachtree Agreement"), under which Mrs. Harrod agreed to transfer the right to 84 additional payments, covering the period between September 2013 and August 2020. That agreement was approved

by the Florida state court on October 7, 2004.

The dispute in this case arises from an event that Rapid alleges occurred between the first and second of Peachtree's agreements with Mrs. Harrod. In April 2004, Mrs. Harrod entered into an agreement with Rapid to assign her rights to what were essentially the same payments as would later be covered in the second Peachtree agreement. Rapid claims that in exchange for those rights, it advanced Mrs. Harrod one thousand dollars. According to Rapid, Mrs. Harrod then refused to proceed with the transfer. At no time, however, did Rapid seek or obtain court approval for the transfer or the taking of a security interest in the settlement payments, as required under Florida law. Instead, Rapid initiated an arbitration proceeding in Texas against Mrs. Harrod, naming F & G Life and F & G Assignment as parties to that proceeding.

F & G Life filed an interpleader action in this court in October 2005 in order to determine its obligations regarding the Harrod payments. Judge Motz ordered that Peachtree, Rapid, F & G Assignment and Mrs. Harrod interplead and settle among themselves the conflicting rights to the second group of settlement payments; he enjoined any further arbitration proceedings in the matter. Meanwhile, Peachtree filed a cross-complaint against Mrs. Harrod and Rapid, seeking a declaration that its interest in the settlement payments was valid and proper. Rapid moved to dismiss the cross-complaint; this court denied that motion on May 25, 2006. Five months after the denial, Rapid moved for reconsideration; the reconsideration motion was deemed untimely and a motion to strike granted. Peachtree moved for summary judgment in September of 2006, and summary judgment was granted in Peachtree's favor. Various legal positions taken in Rapid's motion to dismiss, its response and surreply to Peachtree's motion for summary judgment, and its motion for reconsideration give rise to Peachtree's motion for sanctions.


## ANALYSIS

Fed. R. Civ. P. 11(b) states in part that:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; . . . .

*Id.*

In determining whether a legal contention is unjustified, a court should employ a standard of objective reasonableness, focusing on whether "a reasonable attorney in like circumstances could [not have] believe[d] his actions to be legally justified." *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998) (quoting *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987)); *see also Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002). "A legal contention is unjustified when 'a reasonable attorney would recognize [it] as frivolous.'" *Sargent*, 281 F.3d at 352 (quoting *Forrest Creek Assocs. v. McLean Sav. & Loan Ass'n*, 831 F.2d 1238, 1245 (4th Cir. 1987). Sanctions are appropriate when there is absolutely no chance that the claim will succeed under the prevailing law. *Id.* at 352.

Rule 11 certification also includes the promise that the party is not bringing the action for an improper purpose, such as "to cause unnecessary delay or needless increase in the cost of

litigation." Fed. R. Civ. P. 11(b)(1). Whether or not "a pleading has a foundation in fact or is well grounded in law will often influence the determination of the signer's purpose." *In re Kunstler*, 914 F.2d 505, 518 (4th Cir. 1990).

Rapid has presented two entirely meritless arguments before this court: first, that this court lacks jurisdiction over the case because the interpleader action does not give rise to supplemental jurisdiction; second, that it obtained a valid security interest in the settlement payments prior to the second Peachtree agreement.  I will address each in turn.

Rapid first argues that this court lacks jurisdiction over Mrs. Harrod and Rapid in this dispute because the case does not give rise to supplemental jurisdiction.  In its motion for reconsideration, Rapid repeated its contention (originally advanced in the motion to dismiss) that 28 U.S.C. § 1376 does not support supplemental jurisdiction.  As I explained in the memorandum opinion issued May 25, 2006, and accompanying the denial of Rapid's motion, in an interpleader action, it is diversity among the various defendant-claimants that is essential to establishing jurisdiction.  Under 28 U.S.C. §1335, the claimants must be at least minimally diverse, and the amount in controversy must equal or exceed $500.

Moreover, where, as here, a statutory interpleader action is appropriate, and where the cross-claimants have adversity in their demands upon the object of the interpleader action, the court may entertain cross-claims.  As the Fourth Circuit has noted, interpleader "may not be used as the arena for resolution of the claims of the defendants *inter se*, except insofar as they have adversity in their demands against the fund." *Sayer Bros., Inc. v. St. Paul Fire & Marine Ins. Co.*, 150 F. Supp. 2d 907, 917 (S.D. W. Va. 2001) (quoting *Allstate Ins. Co. v. McNeill*, 382 F.2d 84, 87 (4th Cir. 1967).  The *McNeill* court went on to note that "[o]f course, cross-claims may be

5

asserted by [the cross-claimants'] estates . . . to attack their claims against the common fund, but for no other purpose." 382 F. 2d at 153-54; *see also Carolina Cas. Ins. v. Mares*, 826 F. Supp. 149, 153-54 (E.D. Va. 1993). Both Rapid and Peachtree lay claim to the settlement payments at issue; thus, this court has jurisdiction over the cross-claim.

The scope of an interpleader action clearly encompasses, at the least, parties with conflicting claims to the subject of the action. *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533-34 (1967). Rapid advances its contrary argument not once, but twice; the second time, in the Motion for Reconsideration, offering no new cases or novel legal arguments that would suggest that it is making a "good faith argument for the extension, modification, or reversal of existing law." Fed. R. Civ. P. 11(b)(2).

Rapid also argues that the pending arbitration proceeding in Texas (between it and Mrs. Harrod) should preclude this court from making a determination of rights in this case, because Peachtree should be compelled to participate in the arbitration proceedings. In its Motion for Reconsideration, Rapid emphasizes that in its May 2006 order denying the Motion to Dismiss, this court did not determine whether a valid arbitration agreement existed between Mrs. Harrod and Rapid. It is unclear why this information is necessary; as noted in rejecting Rapid's motion to dismiss, the question is not whether Mrs. Harrod and Rapid had agreed to arbitrate their disputes, but whether such an agreement existed between Peachtree and Rapid. (Mem. Opinion at 6 n.6, May 25, 2006.)

It is true that federal policy favors arbitration; however, the initial inquiry is always whether the parties agreed to arbitrate their dispute. *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 305 (4th Cir. 2001) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,*

6

*Inc.*, 473 U.S. 614, 626 (1985).   Because no such agreement existed between Peachtree and Rapid, the Texas arbitration proceeding cannot be binding against Peachtree.  Moreover, the federal interpleader statute allows this court to enjoin proceedings outside the interpleader action, when those proceedings concern the interpleaded funds.  *See Tashire*, 386 U.S. at 533-34 (recognizing the court's power to enjoin claimants from asserting their rights to the funds at issue except within an interpleader action).

Rapid's second argument is that it obtained a valid security interest in a portion of the settlement payments prior to the second Peachtree agreement. Rapid claims that "in the Transfer Agreement, Lucille Harrod . . . granted to Rapid a first priority security interest under Article 9 of the Uniform Commercial Code in [Mrs. Harrod's] rights to and interest in payments due under the Annuity Contract and/or Settlement Agreement." (Cross-Def. Rapid's Mot. Dismiss Cross-cl. at 4.) This argument is completely without merit.

Rapid could not have obtained a valid interest in the payments because it did not obtain court approval for the transfer of an interest in structured settlement payments.  Fl. Stat. § 626.99296 states that

> A direct or indirect transfer of structured settlement payment rights is not effective and a structured settlement obligor or annuity issuer is not required to make a payment directly or indirectly to a transferee of structured settlement payment rights unless the transfer is authorized in advance in a final order by a court of competent jurisdiction which is based on the written express findings by the court. . . .

Fl. Stat. 626.99296 (3)(a).  A "transfer" is defined as "a sale, assignment, pledge, hypothecation, or other form of alienation or encumbrance made by a payee for consideration." Fl. Stat. § 626.99296 (2)(r).  Clearly, the statute encompasses the type of agreement that Rapid

alleges it entered into with Mrs. Harrod: a grant of a "first priority security interest . . . in [Mrs. Harrod's] rights to and interest in payments due under the Annuity Contract and/or Settlement Agreement." (Cross-Def. Rapid's Mot. Dismiss Cross-cl. at 4.)

Rapid does not dispute that it never obtained - nor did it seek - court approval for any agreement between it and Mrs. Harrod. (See Cross-Def. Rapid's Mem. Opp'n Mot. Sanctions at 3.) Nor does it make a good faith argument in favor of a change or reform in the existing law. Instead, it claims that it was not required to seek such approval, because the Florida Transfer Statute did not pre-empt the granting of a security interest in the settlement payments. Rapid appears to advance two arguments in support of this position: the first, contained in the Motion for Reconsideration, is a lengthy discussion of federal public policy in favor of arbitration. (Cross-Def. Rapid's Mot. Recons. Mot. to Dismiss at 6-9.) As discussed above, any policy preference for arbitration over litigation is effective only as to the parties to the agreement (here, Mrs. Harrod and Rapid).

The second is raised in opposition to Peachtree's Motion for Sanctions. Rapid claims that the Florida Transfer Act applies only to the "transfer" of the settlement payments, and not to the "transfer agreement," which "does not require court approval. It is the actual 'transfer' of the payment stream that is not effective without court approval." (Cross-Def. Rapid's Mem. Opp'n Mot. for Sanctions at 5.) The Florida Transfer Statute defines "transfer agreement" as "the agreement providing for transfer of structured settlement payment rights from a payee to a transferee;" the transfer agreement must be provided to the court in advance of an approval hearing and is crucial to the determination of whether the proposed transfer will be approved. Because the purpose of the Florida Transfer Statute is to "protect recipients of structured

8

settlements who are involved in the process of transferring structured settlement payment rights," Fl. Stat. 626.99296 (1), it would seem odd that the law would apply only to the transfer, and not to the agreement that effected it.[1]

Rapid principally relies upon *Coffey v. Singer Asset Finance Co*, a decision from Texas, in which appellants' structured settlement payments were not considered "assignments or commutations" under the Texas Insurance Code. 223 S.W.3d 559, 570 (Tex. App. 2007). Such reliance is misplaced at best, and disingenous at worst. The court in *Coffey* was not applying the Texas Structured Settlement Protection Act, which it noted "requires court approval of the transfer of structured settlement payments." 223 S.W.3d at 559. In fact, the court was barred from considering that legislation, the terms of which "state it may not be construed to imply that any transfer under a transfer agreement entered into before September 1, 2001, is valid or invalid." Id. at n.12. Indeed, the Texas Transfer Statute, like the Florida Act, includes the "encumbrance" of structured settlement rights among the actions that will be prohibited without court approval. Tex. Civ. Prac. & Rem. Code Ann. §141.002(18) (2007).

This court is not alone in rejecting Rapid's legal arguments. *See Allstate Life Ins. Co. v.*

---

[1]There is conflicting case law regarding the precise moment at which the transfer agreement becomes effective. *See Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, No. H-05-3167, 2007 WL 114497 at *20-21 (S.D. Tex. Jan. 10, 2007) ("The terms of the agreements lend support for finding that court approval is a condition precedent to Rapid Settlements's obligation to pay and to the transferor's ability and obligation to transfer his or her future-payment rights, rather than a condition precedent to the existence of the contract itself."); *but see Rapid Settlements Ltd. v. BHG Structured Settlements, Inc.*, 202 S.W.3d 456, 460 (Tex. App. 2006) ("The plain language of the SSPA requires court approval before the agreement is effective and can be enforced.") Regardless, absent court approval, the transfer agreement between Mrs. Harrod and Rapid is unenforceable against Peachtree. *See Allstate Settlement Corp. v. Rapid Settlements, Ltd.*, No. 06-4989, 2007 WL 1377667, at *4 n.3 (E.D. Pa. May 8, 2007) (noting that the condition precedent issue "need not be addressed because it is sufficient for defining Allstate's rights" that the court deem the transfer unenforceable due to the lack of court approval).

*Rapid Settlements, Ltd.,* No. 06-00629, 2007 WL 2745806 (S.D. Miss. Sept. 20, 2007) (denying Rapid's motion to dismiss and granting Allstate's motion for summary judgment in part, and noting the many federal courts which have rejected Rapid's arguments that court approval was not required for a transfer); *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, No. H-05-3167, 2007 WL 1643211, at *2 (S.D. Tex. June 4, 2007) (entering order of civil contempt against Rapid for violating a preliminary injunction and dismissing Rapid's arguments that arbitration proceedings were not voluntary transfers); *Allstate Settlement Corp. v. Rapid Settlements, Ltd.*, No. 06-4989, 2007 WL 1377667 (E.D. Pa. May 8, 2007) (order granting summary judgment to Allstate) (granting summary judgment on the ground that the transfer agreements lacked court approval, and noting that Rapid could not use arbitration proceedings to circumvent such approval); *R & Q Reinsurance Co. v. Rapid Settlements, Ltd.*, No. 06-14329, 2007 WL 1428746 (S.D. Fla. May 14, 2007) (order denying motion to dismiss) (denying Rapid's motion to dismiss and rejecting the argument that a nonparty to the original agreement could be forced into arbitration); *In re Rapid Settlements, Ltd.*, No. 14-06-00698, 2007 WL 925698 (Tex. App. Mar. 29, 2007) (denying Rapid's petition for writ of mandamus ordering trial court to compel arbitration and rejecting Rapid's demand for attorneys' fees). Rapid points to no cases - and I have found none - in which it has been successful in using arbitration proceedings to circumvent state statutes which require court approval for transfers of settlement payments.

Rapid has also flouted court deadlines. In October 2006 - fully five months after its motion to dismiss was denied - Rapid filed a motion for reconsideration, essentially repeating its arguments from the previous motion. Motions for reconsideration of any order "shall be filed with the Clerk not later than 10 days after entry of the order." Local Rule 105.10.

10

Attempting to excuse the months-long delay in filing its motion to reconsider, Rapid *again* argued that this court lacked jurisdiction over Rapid and Mrs. Harrod.  (*See* Cross-Def. Rapid's Resp. Settlement Funding's Mot. Strike at 2.)  The motion was deemed untimely and struck, but not until both F & G Assignment and Peachtree - not to mention this court - expended both time and resources responding to it.

## CONCLUSION

Throughout this litigation, Rapid has made no attempt to respond either to the arguments raised by Peachtree or the conclusions reached by this court - namely, that this court has jurisdiction over the matter, and that Rapid's claim to the settlement payments is crippled by the fact that it did not seek ratification of the transfer agreement as required by Florida law.  Instead, it has quoted at length from irrelevant Supreme Court decisions and included lengthy excerpts from its agreement with Mrs. Harrod - an agreement which is not at issue in this case.  Additionally, Rapid has disregarded court deadlines, filing a motion for reconsideration more than five months after the ruling it wished the court to reconsider.   The arguments advanced by Rapid have been largely without legal merit, and the numerous cases in which Rapid has attempted to advance similar arguments make this a situation in which deterrence of future abuse is particularly appropriate.   Accordingly, Rule 11 sanctions are warranted against Rapid and its counsel.

A separate order follows.

  September 27, 2007                                         /s/
Date                                                 Catherine C. Blake,
                                                     United States District Judge